graphical element was defined in such a way as to include text with an associated graphical

attribute (size and/or color). US Patent 6,567,830 at Col. 2, ll. 15-21 and Col. 3, ll. 7-15 (Exhibit

EE) ("The program displays lines of text from the document and receives user inputted text. The

program generates a graphical element to include the user inputted text and generates the user

inputted text having a size capable of fitting between two lines of the text from the document.

The program then displays the graphical element in the document. The user inputted text within

the graphical element is displayed between two lines of text from the document." *and* "In still

further embodiments, users may retrieve marking files from different human editors and

associate colors with the different marking files to identify the editor of the markings. In this

way, when the user displays graphical elements including insert text and other markings from

different marking files, the user can readily identify the source of the marking or insert text based

on the color in which the marking or insert text is displayed.").

Accordingly, this phrase should be construed to mean that the link enhancement is

designed to display an element that includes some graphics attribute and that the element is based

on the first URL.

> ### v.     Receiving an indication of a first user selection of said link enhancement

No special construction of this claim is necessary because the meaning is evident from the

claim language itself: when the user selects the link enhancement, an indication is received.

> ### vi.     As a result of said first user selection, capturing said first URL associated with said first page

Within the context of the claim and specification, the phrase "as a result of said first user

selection, capturing said first URL associated with said first page" means as a result of the first

user selection, capturing, that is, remembering, the first URL associated with the first page. It is

Dockets.Justia.com

believed that no special construction of these terms is necessary because the meaning is evident from the claim language itself.

### vii. Displaying a graphical element, said graphical element associated with said captured first URL

The terms "graphical element," "associated," "captured," and "said first URL" have been previously construed in Sections III.A.2.a (iv, iii, vi and iii respectively). Therefore, within the context of the claim and specification, the phrase "displaying a graphical element, said graphical element associated with said captured first URL" should be construed to mean "displaying a graphically formatted element related to the URL remembered from the web page being viewed."

### viii. Said graphical element adapted to cause said first page to be displayed as a result of a second user selection of said graphical element.

This phrase should be construed to mean that the graphical element is associated with the underlying URL so that the first page can be accessed when the user selects the graphical element.

The interpretation given above is supported by the meanings for the claim terms "graphical element" (*see*, Section III.A.2.a.iv, *supra*) and "page" (*see*, Section III.A.2.a.iii, *supra*). It is also supported by examples of functionality provided in the '839 patent's specification. For example, lines 43-55 of column 4 describe an anchor feature which:

> enables users to "anchor" the page they are currently visiting. This means that Enhanced Hyperlink will store the current pages' address in memory and attach this address to a small graphical element or icon, which will "dock" on the edge of the computer screen, which will be the user's "anchor". Then the user can click through on a hyperlink, explore anywhere on the Internet or other hyperlinked media they desire, then **when they are ready to return to the page of origination, or anchor page, they simply click on the "anchor" icon to be presented with the page that originally contained the hyperlink that began the exploration.** [emphasis added].

Accordingly, because of the consistent description in the specification of a mechanism by which a user may revisit the original webpage, the phrase "said graphical element adapted to cause said first page to be displayed as a result of a second user selection of said graphical element" means that the graphical element is associated with the underlying URL so that the first page can be accessed via the graphical element.

> **b.    The '839 Patent is Directly Infringed Both by Google and by Individuals who use the Google Notebook for its Intended Purpose**

In the recent case of *On Demand Machine Corp. v. Ingram Industries*, the Federal Circuit approved the following statement of the law "[i]t is not necessary for the acts that constitute infringement to be performed by one person or entity. When infringement results from the participation and combined action(s) of more than one person or entity, they are all joint infringers and jointly liable for patent infringement." 442 F.3d 1331 at 1344-45 (Fed. Cir. 2006) *cert. denied, On Demand Mach. Corp. v. Ingram Indus.*, 127 S. Ct. 683 (U.S. 2006). In claim 26 of the '839 patent, four basic steps are recited: (1) providing a user-selectable link enhancement for a toolbar; (2) receiving a first user selection of said link enhancement; (3) capturing said first URL associated with said first page; and, (4) displaying a graphical element, said graphical element associated with said captured first URL. As described below, each of those steps is performed in the use of the Google Notebook, with Defendant performing steps 1-3, and the user performing the final fourth step using a special plug-in[18] provided by Defendant. Thus, Defendant is directly liable for infringement of claim 26 of the '839 patent because, as stated in *On Demand*, "[i]nfringement of a patented process or method cannot be avoided by having another perform one step of the process or method." 442 F.3d at 1345.

---

[18] WHATIS.COM; *Plug-in* (May 12, 2003) (plug-in applications are programs that can easily be installed and used as part of your Web browser) available at http://searchsmb.techtarget.com/sDefinition/0,,sid44_gci212800,00.html (accessed August 24, 2007) (Exhibit FF).

### i.    Providing a User-Selectable Link Enhancement for a Toolbar

Defendant's act of making a Google Notebook plug-in available for download clearly

comes within the scope of "providing a user-selectable link enhancement for a toolbar."    As

shown in Figure 3 (below), once installed on a user's computer, the Google Notebook plug-in

extension allows the user to select a new option in a toolbar which is displayed when the user

right clicks over a hyperlink.



**Figure 3: Browser window with toolbar containing "Note this item (Google Notebook)" option.** [19]

Referring to Figure 4 (below), when the user selects the "Note this item (Google Notebook),"

instead of navigating to a new page, a notebook entry is created including a graphical element

related to the page the user was visiting when the user selected the option.

---

[19] All screen shots utilized in this document are intended as representing typical pages (in this case, various pages associated with the Kentucky.com website) showing the intended operation of the Google Notebook. "A screen shot is a copy of the screen's contents that can be saved as a graphics file or copied into a document or graphics editor." WHATIS.COM, *Screen Shot* (July 31, 2001), http://whatis.techtarget.com/definition/0,,sid9_gci497372,00.html (accessed August 24, 2007) (Exhibit GG).



**Figure 4: Browser window with a Mini-Notebook displaying a notebook entry created by choosing "Note this item (Google Notebook)"**

As set forth in section III.A.2.a.i, *supra,* "providing a user-selectable link enhancement for a toolbar" means making available a function in a toolbar, for example, an option inserted into the toolbar, which enhances a hyperlink by making it possible to do something with that hyperlink other than clicking to move to a new page. Turning to a general purpose dictionary, the modifier "available" may mean either "1. Present and ready for use; at hand; accessible" or "2. Capable of being gotten; obtainable" depending on the context. American Heritage Dictionary, *Available* (2000) available at http://www.bartleby.com/61/26/A0542600.html (accessed August 24, 2007) (Exhibit AA).

Creating a notebook entry, as shown above, is an enhancement that does not involve 'clicking to move to a new page.' Furthermore, maintaining a web page from which the Google Notebook browser extension can be downloaded qualifies as making the function represented by the "Note this item (Google Notebook)" option readily obtainable. Thus, the act of "providing a user-selectable link enhancement for a toolbar" is performed by Defendant in this case.

### ii. The toolbar being displayable based on a location of a cursor in relation to a hyperlink in a first page in a first window of an application.

Defendant also meets the requirement of "the toolbar being displayable based on a location of a cursor in relation to a hyperlink in a first page in a first window of an application." As described in Section III.A.2.a.ii, *supra*, this claim element means that the toolbar can become visible when the cursor is positioned in a certain area in relation to the hyperlink. In the case of the Google Notebook, when the user right clicks over a hyperlink, a toolbar, including a "Note This Item (Google Notebook)" option, appears. As shown Figures 5 and 6 below, the toolbar which is made visible when the user right clicks over a hyperlink contains options which are undeniably different from the options contained in the toolbar which is made visible when the user right clicks over non-linked text.



Figure 5: The toolbar displayed when a user right clicks over a hyperlink.

Figure 6: The toolbar displayed when a user right clicks over plain text in a web page.

It should be noted that there is nothing in the claim language that precludes right clicking on the hyperlink. This is different from, for example, claim 1, which requires "detecting a cursor in proximity to said hyperlink." Comments made during prosecution of related patent 6,925,496 distinguished a claim which recited "detecting a cursor in proximity to a hyperlink" from a reference which required clicking to access enhanced functionality (Newfield). However, the limitations of "detecting a cursor in proximity to a hyperlink" do not appear anywhere in claim 26. Instead, all that claim 26 requires is that the toolbar is displayable based on the location of the cursor in relation to a hyperlink in a first page in a first window of an application. As is obvious, this claim element means that the toolbar can become visible when the cursor is positioned in a certain area in relation to the hyperlink. In the case of the Google Notebook, when the user right clicks over a hyperlink, a toolbar, including a "Note This Item (Google Notebook)" option, appears.

Thus, the toolbar into which the "Note this item (Google Notebook)" option is inserted meets the requirements of "the toolbar being displayable based on a location of a cursor in relation to a hyperlink in a first page in a first window of an application."

### iii. Wherein said first page is associated with a first uniform resource locator (URL); wherein said hyperlink is associated with a second URL and a second page

As discussed above, this phrase means that the web page where the hyperlink appears has a first URL, and that the hyperlink is programmed to present a second page having a second URL to the user. As Figure 7 (below) illustrates, the first page (1) is related to a first URL (2) and a hyperlink (3) is associated with a second URL (4) and a second page.



Figure 7: The URLs respectively associated with the hyperlink and the page itself.

### iv.   Wherein said user-selectable link enhancement is adapted to display a graphical element based on said first URL

As discussed previously, a graphical element means an element that includes some graphical attribute.

When the user selects "Note this Item (Google Notebook)", a notebook entry appears that corresponds to the page being viewed, that is, the first URL. Referring to Figure 8 (below), the notebook entry includes a bolded title for the page being viewed, "Kentucky.com|Sports" which is accessed by the first URL. Accordingly, the user selectable link enhancement is adapted to

display a graphical element (the title which includes a bolded graphics attribute)[20] based on the

first URL (title is taken from the page having the first URL).



**Figure 8. Displaying the connection between the bolded title in the notebook entry and the title of web page associated with the first URL. If the bolded title in the notebook entry is clicked by the user, the browser will display the page associated with the first URL.**

### v. Receiving an indication of a first user selection of said link enhancement

The step of "receiving an indication of a first user selection of said link enhancement" is

also performed by Defendant. As discussed in Section III.A.2.a.v, *supra*, this phrase may be

interpreted according to its plain meaning. As set forth below, the Defendant clearly receives an

indication that the user has selected the link enhancement.

---

[20] Accordingly, the title is <u>formatted</u> text – it contains a graphics attribute, and is accordingly a "graphical element."

As set forth on the Frequently Asked Questions page provided by Defendant for Google Notebook, a user can access his or her notebook from any computer by logging into an account maintained for the user with Defendant. *See, Google Notebook FAQ* (Exhibit K) ("You can access your notebooks from any computer at any time. Simply log in to your Google Notebook account from www.google.com/notebook."). Accordingly, Defendant receives an indication that the user has activated a link enhancement. This is so because otherwise Defendant would not be able to appropriately update the information in the user's account and allow the user to access the user's notebooks through multiple computers. Therefore, because Google allows users to access their personal notebooks through multiple computers, Defendant performs the step of receiving an indication of a first user selection of the link enhancement.

### vi.      As a result of said first user selection, capturing said first URL associated with said first page

As discussed in Section III.A.2.a.vi, *supra*, the claim element "as a result of said first user selection, capturing said first URL associated with said first page" means "remembering the first URL associated with the first page."   As described previously, the notebook entry, which is created when a user clicks "Note this item (Google Notebook)," includes a title which, when selected by the user, causes the user's computer to display the page the user was viewing when the user selected the "Note this item (Google Notebook)" option. This means that Defendant must "remember" the first URL associated with the first page, because otherwise the user would not be able to access the web page that was being viewed when the notebook entry was initially created.   Also, since the user may access the Notebook from any computer, using the account maintained by Defendant, Defendant's system remembers the URL of the first page so that the user can access the notebook entry from a computer other than that which the user was using

when the user selected "Note this item (Google Notebook)." Accordingly, Defendant performs the step of "capturing said first URL associated with said first page."

### vii.     Displaying a graphical element, said graphical element associated with said captured first URL

When using the Google Notebook, the users perform this step on their computer as a result of utilizing the "Note this Item" link enhancement provided by Defendant. The notebook entry which appears in the Mini-Google Notebook includes the bolded title of the first page. Because a "graphical element" means "an element which includes a graphical attribute," the bolded title in the notebook entry clearly constitutes a graphical element based, at least, on its specific formatting. Also, the bolded title in the notebook entry is unquestionably associated with the web page being viewed, because when the bolded title is selected, that page is displayed. Therefore, since the user's computer monitor presents a notebook entry with the bolded title when the user clicks "Note this item (Google Notebook)," the fourth step of the method of claim 26 is performed by the user when using Google Notebook.

### viii.    Said graphical element adapted to cause said first page to be displayed as a result of a second user selection of said graphical element.

As discussed above, this claim element means that the graphical element is associated with the underlying URL so that the first page can be accessed when the user selects the graphical element.

As shown in Figure 9 (below), when the user selects the bolded title in a notebook entry associated with Google Notebook, the user will be taken to the first page.



**Figure 9. Displaying the browser screen after selection of the graphical element associated with the first URL (note, the URL listed in the address bar is that associated with the Kentucky.com|Sports web page).**

Therefore, since clicking on the graphical element associated with the first URL results in the user being taken to that URL, the requirement "said graphical element adapted to cause said first page to be displayed as a result of a second user selection of said graphical element" is met.

### c. In Addition to Being Liable for Directly Infringing Claim 26 of the '839 Patent, Defendant is Liable for Inducing Infringement by Users of the Google Notebook

35 USC § 271(b) proscribes conduct that "actively induces" another to infringe a patent. Inducement only occurs if the party being induced directly infringes the patent. *Crystal*

*Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1361 (Fed. Cir. 2001).

To establish liability for inducing infringement, it is required "that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *DSU Medical Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006). This section demonstrates that, in addition to being performed through the combined efforts of Defendant and users of the Google Notebook, the steps of claim 26 are also performed by the users of Google Notebook alone. This section also shows that Defendant has specific intent to encourage that infringement by its users, and therefore that Defendant should be liable for inducement of infringement.

### i. Each Step Recited in Claim 26 is Performed by Users of the Google Notebook

Using the definitions set forth in Section III.A.2.a, *supra*, each step recited in Claim 26 is also performed by the users of the Google Notebook. As previously discussed in Section III.A.2.b, *supra*, there are four basic steps in claim 26: (1) providing a user-selectable link enhancement for a toolbar; (2) receiving a first user selection of said link enhancement; (3) capturing said first URL associated with said first page; and, (4) displaying a graphical element, said graphical element associated with said captured first URL. The following analysis focuses on these specific steps as the construction and interpretation of the clauses depending on these steps has already been discussed in Sections III.A.2.a-b, *supra*.

While Defendant makes the interaction represented by the "Note this item (Google Notebook)" option available by making it readily obtainable, the users of the Notebook make it available by downloading the Google-furnished plug-in, which makes the interaction ready for use on the user's computer. The users also make the interaction represented by the "Note this

item (Google Notebook)" available by running a browser augmented with the plug-in, which results in the interaction being at hand for activation. Thus, the first step of claim 26, "providing a user-selectable link enhancement for a toolbar" is performed not only by Defendant, but also by end users of the Google Notebook.

The step of "receiving an indication of a first user selection of said link enhancement" is also performed by the users of the Google Notebook because, for the Google Notebook plug-in to be activated when the user clicks the "Note this item (Google Notebook)" option, the user's computer must receive an indication of the user's selection.

The step of "capturing said first URL associated with said first page" is also performed by a user of the Google Notebook. When a user selects the "Note this item (Google Notebook)" option a new notebook entry is displayed in the Mini-Notebook window on the user's computer. The notebook entry includes a title which, when selected, takes the user to the page located at the first URL. For this to take place, the notebook entry, including the first URL, is remembered by the computer the user is using to browse the internet. Therefore, since "capturing said first URL associated with said first page" means remembering the first URL associated with the first page, the user of the Google Notebook clearly performs the third step of the method of claim 26.

Analysis showing that the users of the Google Notebook perform the final step of the method of claim 26 – "displaying a graphical element, said graphical element associated with said captured first URL" is set forth in Section III.A.2.b.viii, *supra*. That analysis, combined with the analysis in this section showing that the users of the Google Notebook perform steps 1-3 of claim 26, demonstrates that claim 26 of the '839 patent is directly infringed by users of the Google Notebook.

###### ii. Defendant Has Specific Intent That Users of the Google Notebook Infringe Claim 26

To establish liability for inducing infringement, it is required "that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *DSU Med.*, 471 F.3d at 1305. This burden can be met if iLOR shows that the Defendant "knew or should have known his actions would induce actual infringements." *Id.* at 1304 quoting *Manville Sales Corp. v. Paramount Systems, Inc.*, 917 F.2d 544, 554 (Fed. Cir. 1990). However, "[w]hile proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice." *Id.* quoting *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988). Indeed, if it can be shown that the accused inducer had specific intent to induce the infringing acts, and had actual knowledge of the infringed patent, "intent additionally to cause an infringement can be presumed." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, n.4 (Fed. Cir. 2005). Further circumstantial evidence which is relevant to the existence of intent to induce infringement includes "advertising an infringing use or instructing how to engage in an infringing use, [both of which] show an affirmative intent that the product be used to infringe." *DSU Medical, 417 F.3d at 1304* quoting *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 5125 S. Ct. 2764, 2779 (2005).

Given the standards set forth above, it is clear Defendant has the intent required to be liable for inducing infringement by users of Google Notebook. Given the current litigation, it is indisputable that Defendant has knowledge of the '839 patent.[21] It is also indisputable that Defendant has specific intent to induce the acts by which Google Notebook users infringe claim 26. On a website maintained by Defendant, under the heading of "Why do I need to download a browser extension?" Defendant explains that, after downloading the Google Notebook plug-in,

---

[21] Plaintiff filed the initial complaint the day the '839 patent issued (April 17, 2007) and filed an amended complaint on August 27, 2007.

"[y]ou'll never again need to toggle between windows, or copy and paste info from your browser window to another application." Exhibit K, ¶ 5. This statement shows an intent to encourage the downloading and use of the Google Notebook extension, because relieving the user of the burdens associated with using a traditional browser is a significant benefit. *See,* '839 patent col. 6, ll. 12-17 (describing that a particular link enhancement can be beneficial based on saved user time and effort). On the same website where Defendant explains the benefits of downloading the Google Notebook browser extension, Defendant also tells Google Notebook users to "right-click on the text, image or link you want and click Note this (Google Notebook) from the menu." Exhibit K, ¶ 7. Since the user right clicking over a link and clicking on the Google Notebook option in the toolbar results in a new notebook entry, which includes the URL of the page the user was viewing being displayed on the user's computer, and because the creation of that notebook entry requires receiving an indication of the user's selection and capturing the URL, the instructions provided on Defendant's website and the promotion of the Google Notebook show defendant's actual intent to encourage the infringing acts by the users. Therefore, based on the rule set forth in *MEMC v. Mitsubishi*, Defendant's intent to cause infringement can be presumed.

## B. Movant Will Suffer Irreparable Harm Absent The Preliminary Injunction

"Irreparable harm is presumed when a clear showing of patent validity and infringement has been made." *Pfizer, Inc. v. Teva Pharms. USA, Inc.,* 429 F.3d 1364, 1381 (Fed. Cir. 2005). This presumption reflects the fact that the "principal value of the patent is its statutory right to exclude." *Hybritech, Inc. v. Abbot Labs.,* 849 F.2d at 1456. Furthermore, irreparable harm may be demonstrated via certain factors including that defendant's continuing infringement will injure a collateral benefit provided by the patent other than a right to receive money damages; interfere

with the plaintiff's ability to control the use and licensing of the patented technology; erode the plaintiff's position in the market; encourage others to infringe; threaten the survival of the plaintiff's business; destroy the value of the patent; and that plaintiff and defendant are direct competitors trying to influence the same group of customers; plaintiff has spent a large sum of money on market development; and plaintiff stands to lose a large part of its market share if infringement is not enjoined. *Jacobson v. Cox Paving Co.*, 19 USPQ 2d 1641, 1653 (D. Ariz. 1991) aff'd 949 F.2d 404 (Fed. Cir. 1991).

As iLOR has already satisfied its burden of making a clear showing of validity for the '839 patent and has further demonstrated infringement of claim 26 of the '839 patent in the foregoing sections, the Court may presume that iLOR will suffer irreparable harm without the grant of a preliminary injunction.

Notwithstanding the presumption, which falls in iLOR's favor, iLOR can further show that it will suffer from immediate, irreparable harm without the issuance of a preliminary injunction. Consumers' unquestioned familiarity with the Google branding (at least through their familiarity with the Google Search Engine at www.google.com) provides Google with a hook to draw users to its Google Notebook application. The key to competitive advantage in internet applications is the extent to which users add their own data. *See*, *O'Reilly. See also, Affidavit at* ¶ 7. Therefore, Google's continuing infringement will injure a collateral benefit provided by the patent other than a right to receive money damages.

Additionally, a web-based company needs to generate about one billion hits a month to reach the stage of making an initial public offering. *See*, Michael Kanellos[22], *The Scary Math*

---

[22] Michael Kanellos is editor at large at CNET News.com, where he covers hardware, emerging trends, start-ups and the tech industry overseas. He has appeared on National Public Radio, The Early Show on CBS, CNBC, Fox News and other media outlets on behalf of CNET News.com as well as participated in a number of panels. *See*, *Michael Kanellos Bio* available at

*Behind Web 2.0* (April 17, 2007) available at http://news.com.com/8301-10784_3-9710510-

7.html?part=rss&subj=news&tag=2547-1_3-0-20 (accessed August 24, 2007) (Exhibit II)[23]

Google's diversion of traffic from iLOR's website irreparably damages its ability to reach even a

reasonable fraction of these numbers.    Therefore, Defendant's continuing infringement will

continue to erode the plaintiff's position in the market.

By inserting a method which clearly infringes the '839 patent into the market Google is

not merely taking profits away from the iLOR. Rather, it is developing relationships with

potential users and detracting from iLOR's ability to present its product to the consuming public

as one that is uniquely designed to serve its needs. A search of the Google Blog since the lawsuit

was originally filed to August 17, 2007, shows over 3,600 entries mentioning the Google

Notebook.[24] In short, iLOR is being prevented from attaining its rightful market share in a

growing technology field.[25] Therefore, Google is trying to influence the same group of

customers as the Plaintiff and plaintiff stands to lose a large part of its market share if

infringement is not enjoined.

---

http://www.idema.org/_smartsite/modules/news/show_news.php?cmd=display&news_id=1393 (accessed August 24, 2007) (Exhibit HH).

[23] News.com is run by C|Net which has been recognized by the NEW YORK TIMES as combining "technology news, reviews, software and services." Rich Mieslen, *The New York Times Newsroom Navigator,* NEW YORK TIMES (February 25, 2007) available at http://tech.nytimes.com/top/news/technology/cybertimesnavigator/index.html (accessed August 24, 2007) (Exhibit JJ).

[24] Search of the Google Blog for occurrences of the term "Google Notebook" from April 17, 2007 through August 17, 2007 at

http://blogsearch.google.com/blogsearch?as_q=&num=10&hl=en&c2coff=1&as_oq=&as_eq=&lr=&safe=active&q =%22google+notebook%22&ie=UTF-

8&as_mind=17&as_minm=4&as_miny=2007&as_maxd=17&as_maxm=8&as_maxy=2007&as_drrb=b&ctz=240& c1cr=4%2F17%2F2007&c2cr=8%2F17%2F2007&btnD=Go (accessed August 24, 2007) (Exhibit KK).

[25] "Enterprise social software is forecast to have compound annual revenue growth of 41.7% through 2011." Tom Eid and Nikos Drakos, *The Emerging Enterprise Social Software Marketplace* (abstract) (July 23, 2007) (search for articles pertaining to social software in http://www.gartner.com/ (search run August 24, 2007) (Exhibit LL). Gartner is an information and technology research and advisory firm. *See*, WIKIPEDIA, *Gartner* (August 3, 2007) available at http://en.wikipedia.org/wiki/Gartner (accessed August 24, 2007) (Exhibit MM).

If an injunction is not issued, the erosion suffered thus far is irreparable as iLOR will entirely lose its foothold in the field of social search. Therefore, Google's continued infringement threatens the survival of iLOR's business.

Finally, as discussed in Section I (Background), iLOR's media budget was originally directed toward promoting itself as an industry leader in forums such as the Kentucky Derby Roundtable on Social Search.[26]  Elizabeth Montalbano, *Prefound.com to Wed Social Networks, Search,* INFOWORLD[27] (April 12, 2006) available at

http://www.infoworld.com/archives/emailPrint.jsp?R=printThis&A=/article/06/04/12/77379_HN prefound_1.html (accessed August 24, 2007) (Exhibit PP).  *See also, Affidavit at* ¶ 8 (Exhibit R). These efforts and dollars had to be redirected toward attempting to differentiate itself from Google.  *Id.*  Therefore, plaintiff has spent a large sum of money on market development to no avail against the juggernaut of Google.

All of the aforementioned factors lead to the logical conclusion that if Google's unlawful use of iLOR's patented technology is not stopped, the continuing infringement will interfere with Plaintiff's ability to control the use and licensing of the patented technology and others will be encouraged to infringe which will destroy the value of the Plaintiff's patent.  Indeed, if iLOR does not obtain this injunction, which would enable it to re-establish itself as the exclusive provider of the patented technology, iLOR will be unable to attract further investment dollars to keep the Prefound.com website a going concern and it will go out of business.  *See, Affidavit at* ¶ 10 (Exhibit R).  Furthermore, iLOR falls further and further behind in this growing market with each day of delay.  Continued waiting, to be recognized as the exclusive provide of the patented

---

[26] The Kentucky Derby Roundtable (May 5-6, 2006) available at http://www.prefound.com/roundtable (accessed August 24, 2007) (Exhibit NN).

[27] INFOWORLD is an information technology online media and events business operating under the umbrella of InfoWorld Media Group, a division of IDG (International Data Group).  *See,* WIKIPEDIA, *InfoWorld* (April 30, 2007) available at http://en.wikipedia.org/wiki/InfoWorld (accessed August 22, 2007) (Exhibit OO)

social search tool, will result in iLOR being so far behind the leaders in social software that it will not be able to catch up. iLOR will simply cease to exist altogether. *Id.*

Thus, iLOR has shown irreparable harm both due to the presumption of such as well as independently of the presumption.

### C. The Balance of Hardships is Clearly in iLOR's Favor

The Court must balance the harm that will occur to the moving party from the denial of the preliminary injunction with the harm that the non-moving party will incur if the injunction is granted. *Lambton Mfg. v. Young*, 833 F. Supp. 610, 616 (W.D. Ky. 1993), *citing Hybritech*, 849 F.2d 1446.

The patented technology offered by iLOR is one of its principal products and a substantial source of its overall package to leverage the field of social software. If Defendant is allowed to continue its infringement, even for the life of this case, iLOR's ability to promote its products will be substantially impaired and will lead to an erosion of the value and enforceability of its patent. Tech watchers have already dubbed Google the "startup killer" – a 10,000 pound gorilla that squashes small companies like iLOR. *See, THE 360* (Exhibit W).

Defendant, on the other hand, will suffer limited, if any, harm, if the requested injunction is imposed. Google's is a major publicly traded corporation having international reach and a market value of over \$115 billion.[28] Indeed, Google's business from its website exceeds \$10 billion per year[29], and it is reported to have billions in cash reserves.[30] The injunction will not

---

[28] Nasdaq Summary Quotes, *Google*, August 24, 2007,
http://quotes.nasdaq.com/asp/SummaryQuote.asp?symbol=GOOG&selected=GOOG (accessed August 24, 2007) (Exhibit QQ).
[29] Ari Levy, *Google Isn't Threatened by Slowdown, Economist Says (Update2)*, BLOOMBERG (August 24, 2007) available at
http://www.bloomberg.com/apps/news?pid=conewsstory&refer=conews&tkr=GOOG:US&sid=awY5Vfh7.dXM (accessed August 27, 2007) (Exhibit RR). Bloomberg L.P. is the largest financial news and data company in the

close down Defendant's operation. Rather it will merely require that Defendant cease infringing and/or inducing infringement of the '839 patent by via features in a single, relatively new product: Google Notebook. Furthermore, the Google Notebook is not Defendant's prime differentiator as Defendant is most readily recognized for its search engine. Finally, given Defendant's market strength, it can almost certainly recoup any market share dampened by the preliminary injunction should it actually prevail.

In balancing the harm between denial of the preliminary injunction to the iLOR and granting of the preliminary injunction against the Defendant, the harms faced by iLOR are clearly greater.

## D. The Public Has a Strong Interest in Enforcing Patent Rights

The public has a strong interest in enforcing the rights bestowed upon holders of United States Patents. A preliminary injunction that enforces a valid patent against an infringer "does not more than further public policy inherent in the patent laws designed to encourage useful inventions by rewarding the invention with a limited period of market exclusivity." *Pfizer,* 429 F.3d at 1381.

In this case, the public has an interest in encouraging innovators to continue to develop more useful tools to sift through the millions of websites available on the Internet. By closing the Plaintiff off from the ability to compete, the public will be offered such tools, generally, much

world. *See*, WIKIPEDIA, *Bloomberg L.P.* (August 19, 2007) available at http://en.wikipedia.org/wiki/Bloomberg_L.P. (accessed August 27, 2007) (Exhibit SS).

[30] Paul R. LaMonica, *What Google should do with its $10 billion war chest*, CNN MONEY (April 11, 2006) available at http://money.cnn.com/2006/04/11/news/companies/google_cash/index.htm (accessed August 27, 2007) (Exhibit TT). CNNfn's former website now redirects to money.cnn.com, a product of CNN's strategic partnership with Money Magazine. WIKIPEDIA, *CNN* (August 23, 2007) available at http://en.wikipedia.org/wiki/Cnn (accessed August 27, 2007) (Exhibit UU).

less frequently and at lower quality levels. Therefore, there is a strong interest in protecting patent holders in this space.

## IV. Conclusion

iLOR has clearly demonstrated the existence of all four factors of the traditional test for obtaining a preliminary injunction.

iLOR has clearly established a reasonable likelihood of success on the merits.

iLOR has clearly illustrated that immediate irreparable harm will result if the relief is not granted.

iLOR has determined that the balance of hardships to the parties clearly weighs in iLOR's favor.

iLOR has clearly confirmed that the public interest is best served by granting the injunctive relief.

Therefore, iLOR respectfully requests that this Court issue a preliminary injunction against Defendant preventing it from further infringing or inducing infringement by its users by providing and supporting the Google Notebook.

Respectfully submitted,

s/ Susan Grogan Faller
Susan Grogan Faller (82812)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
(513) 651-6641 Phone
(513) 651-6981 Fax
sfaller@fbtlaw.com

David E. Schmit (Ohio Bar #0021147)
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202
 (513) 651-6985 Phone
 (513) 651-6981 Fax
dschmit@fbtlaw.com

*Attorneys for Plaintiff*
*iLOR, LLC.*

## **CERTIFICATE OF SERVICE**

This is to certify that on this 27th day of August, 2007, the foregoing was filed with the

clerk of the court by using the CM/ECF system and that a true and correct copy of the foregoing

has been served upon Counsel for Defendant, by e-mail and overnight mail, addressed as follows:

Frank E. Scherkenbach, Esq.
Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110-2804
scherkenbach@fr.com
Attorney for the Defendant

s/ Susan Grogan Faller