UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| iLOR, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:07-109-JMH |
| | ) | |
| v. | ) | |
| | ) | |
| GOOGLE, INC. | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*     \*\*     \*\*     \*\*     \*\*

This matter is before the Court on the Motion for Preliminary Injunction filed by Plaintiff iLOR, LLC (hereinafter, "iLOR") [Record No. 12], and the cross-Motion for Summary Judgment filed by Defendant Google, Inc. (hereinafter, "Google") [Record No. 52] in the above-referenced matter.  These motions have been fully briefed [Record Nos. 54, 60, 61, 65], and oral argument was heard by the Court on November 19, 2007.  Accordingly, these motions are now ripe for decision.

I.   **BACKGROUND**

Plaintiff iLOR, founded in 2000, considers itself a technology innovator in the field of utilizing the Internet via hyperlinks as well as in the social software context (web-enabled software programs allowing users to interact, share, and/or meet with other users). Plaintiff applied for a patent for an enhanced-hyperlink tool as early as May 4, 2000, the filing date of Provisional

Application No. 60/202,029, from which the patent-in-suit, U.S. Patent No. 7,206,839 (hereinafter, "Patent '839"), claims priority.[1]  Plaintiff is also the assignee of U.S. Patent No. 6,925,496 (hereinafter, the "'496 Patent"), which is a parent patent to the patent-in-suit.

The '839 Patent is directed to a "Method for Adding a User Selectable Function to a Hyperlink."  Plaintiff's claims in the instant matter revolve around Claim 26 of Patent '839, directed to a method for enhancing a hyperlink:

> 26.   A method for enhancing a hyperlink, comprising providing a user-selectable link enhancement for a toolbar, the toolbar being displayable based on a location of a cursor in relation to a hyperlink in a first page in a first window of an application, wherein said first page is associated with a first uniform resource locator (URL), wherein said hyperlink is associated with a second URL and a second page, wherein said user-selectable link enhancement is adapted to display a graphical element based on said first URL; receiving an indication of a first user selection of said link enhancement; and as a result of said first user selection, capturing said first URL associated with said first page; and displaying a graphical element, said graphical element associated with said captured first URL, said graphical element adapted to cause said first page to be displayed as a result of

---

[1]    The patent-in-suit was prosecuted, as are all patents, in the name of the inventors (Gerald W. Ingram and Steve Mansfield). iLOR, LLC (hereinafter, "iLOR"), is actually the assignee of the  U.S. Patent No. 7,206,839 and certain others mentioned in this memorandum opinion and order.  Understanding these facts but for ease of reference and reading, the Court will refer to the inventors and iLOR interchangeably.

               a second user selection of said graphical element.

Google provides a product to its users called Google Notebook (hereinafter, "Notebook"). The software provides a small window, the "Google Mini-Notebook," in which users can exploit the Internet via hyperlinks, storing information in the Google "Mini-Notebook." This is accomplished by clicking the right mouse button while the cursor is positioned over a hyperlink located on a webpage. That right click causes a toolbar to be displayed from which the user may then select the "Note This Item" option and store a notebook entry in which the second URL is related to the first viewed webpage.

Google's Notebook has been available to users since 2006. During that time, iLOR continued its prosecution of the then-pending patent application covering its technology (Application No. 11/056,161). The result was the '839 Patent, issued on April 17, 2007. Upon issuance of the '839 Patent, iLOR filed its Complaint [Record No. 1], alleging that Google's Notebook product infringes the '839 Patent and specifically averring that Notebook practices all of the elements of Claim 26 of its patent.


## II. STANDARDS OF REVIEW

### A. Motion for Preliminary Injunction

In patent cases, traditional rules of equity apply to requests

for injunctive relief. *eBay, Inc. v. MercExchange, L.L.C.,* --- U.S.
----, ----, 126 S.Ct. 1837, 1839 (2006).  This Court has the power
to grant an injunction to prevent the violation of patent rights.
*See* 35 U.S.C. § 283.  In order to obtain a preliminary injunction,
a patent owner must demonstrate:

> (1) a reasonable likelihood of success on the
> merits; (2) the prospect of irreparable harm
> to the patent owner in the absence of the
> injunction; (3) that this harm would exceed
> harm to the alleged infringer when subject to
> the injunction; and (4) that granting the
> injunction is in the public interest.

*Canon, Inc. v. GCC Intern. Ltd.,* No. 2006-1615, 2007 WL 4005018, *2
(Fed. Cir., Nov. 16, 2007) (*citing Jeneric/Pentron, Inc. v. Dillon
Co.,* 205 F.3d 1377, 1380 (Fed. Cir. 2000); *Nutrition 21 v. United
States,* 930 F.2d 867, 869 (Fed. Cir. 1991)).  In order to show the
requisite likelihood of success on the merits, the patent owner is
required to show proof on both validity and infringement.
*Jeneric/Pentron, Inc.*, 205 F.3d at 1380.

### B.   Motion for Summary Judgment

A grant of summary judgment is proper "if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no genuine
issue as to any material fact and that the moving party is entitled
to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The moving party bears the initial burden to show the absence
of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986).  This burden is met simply by showing the
court that there is an absence of evidence on a material fact on
which the nonmoving party has the ultimate burden of proof at
trial.  *Id.* at 325.  The burden then shifts to the nonmoving party
to "come forward with some probative evidence to support its
claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir.
1994).  A material fact is one that may affect the outcome of the
issue at trial, as determined by substantive law.  *Celotex*, 477
U.S. at 325.

When determining if summary judgment is proper, the Court's
function is not to weigh the evidence, but to decide whether there
are genuine factual issues for trial.  *Anderson v. Liberty Lobby,
Inc.*, 477 U.S. 242, 249 (1986); *Multimedia 2000, Inc. v. Attard*,
374 F.3d 377, 380 (6th Cir. 2004).  A genuine dispute exists on a
material fact, and thus summary judgment is improper, if the
evidence shows "that a reasonable jury could return a verdict for
the nonmoving party." *Anderson,* 477 U.S. at 248; *Summers v. Leis*,
368 F.3d 881, 885 (6th Cir. 2004).  The evidence should be
construed in the light most favorable to the nonmoving party when
deciding whether there is enough evidence to overcome summary
judgment.  *Anderson*, 477 U.S. at 255; *Summers*, 368 F.3d at 885.
While this Court must draw all inferences in a light most favorable
to the plaintiff, summary judgment may be granted "if the record,
taken as a whole, could not lead a rational trier of fact to find

-5-

for [the plaintiff]." *McKinnie v. Roadway Express*, Inc., 341 F.3d 554, 557 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

In the context of a patent infringement claim, it is taught that:

> Summary judgment is appropriate when it is apparent that only one conclusion as to infringement could be reached by a reasonable jury. *Telemac Cellular Corp. v. Topp Telecom, Inc.,* 247 F.3d 1316, 1323 (Fed.Cir.2001) (citation omitted). "Summary judgment of noninfringement is appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, since such failure will render all other facts immaterial." *Id.*

*Byrne v. Black & Decker Corp.*, Civil Action No. 2004-262-WOB, 2006 WL 1117685, *2 (E.D. Ky. Apr. 27, 2006). The plaintiff bears the burden of proving infringement by a preponderance of the evidence. *Kahn v. General Motors* Corp., 135 F.3d 1472, 1476-77 (Fed. Cir. 1998).


**III. ANALYSIS**

In order to assess whether there is a reasonable likelihood that iLOR can demonstrate that the '839 Patent has been infringed or, as Google argues, it is impossible for iLOR to do so, the Court must first determine the correct meaning and scope of asserted Claim 26 as a matter of law. *TechSearch, LLC v Intel Corp.,* 286 F.3d 1360, 1369 (Fed. Cir. 2002); *Kahn*, 135 F.3d at

1476; *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995); *Byrne*, 2006 WL 1117685 at *3. Once Claim 26 is properly construed, the Court will compare Claim 26 with the accused device, Google Notebook, to determine as a matter of fact whether all of the limitations of Claim 26 or their equivalents are present in Notebook. *Id*.

### A.   Construction of Claim 26

In construing claims, there is a "'strong presumption' that claim terms carry their ordinary meaning as viewed by one of ordinary skill in the art." *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1371 (Fed. Cir. 2003). "Properly viewed, the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005).

When determining the ordinary meaning of claim language, resort may be had to intrinsic evidence including "the words of the claims themselves, the remainder of the specification, the prosecution history, extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Phillips*, 415 F.3d at 1314 (citing *Innova Pure Water, Inc. v. Safari Water Filtration Systems,* Inc., 381 F.3d 1111 (Fed. Cir. 2004)); *see also  Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 976-77 (Fed. Cir. 1999).  Since claims must be given their ordinary and customary meaning:

> [They] must be read in view of the
> specification, of which they are a part. Since
> claims are part of the specification, it "is
> the single best guide to the meaning of a
> disputed term. In examining the specification
> for proper context, however, this court will
> not at any time import limitations from the
> specification into the claims.

*Stumbo v. Eastman Outdoors, Inc.*, Nos. 2007-1186 and 2007-1205, ---
F.3d ---, ---, 2007 WL 4180137, *2 (Fed. Cir. Nov. 28, 2007)
(quoting *Phillips*, 415 F.3d at 1315; *CollegeNet, Inc. v.
ApplyYourself, Inc.,* 418 F.3d 1225, 1231 (Fed. Cir. 2005))
(internal quotation marks omitted). Additionally, "[t]he
prosecution history gives insight into what the applicant
originally claimed as the invention, and often what the applicant
gave up in order to meet the Examiner's objections." *Lemelson v.
General Mills, Inc.*, 968 F.2d 1202, 1206 (Fed. Cir. 1992).

The Court begins with the element of claim 26 that describes
the toolbar in the invention as "being displayable," and upon which
the parties have expended a great deal of argument and energy.
iLOR takes the position that the phrase should be construed to mean
"can become automatically displayed" but that the toolbar need not
necessarily be automatically displayed. In other words, iLOR
theorizes that the toolbar might be displayed following the use of
a right mouse click and the embodiment would remain in keeping with
the language in Claim 26. Google takes the position that this
portion of Claim 26 means, quite simply, that the toolbar "is

automatically displayed" and that the use of a right-mouse click to prompt the display of the toolbar is not taught by Claim 26. For the reasons stated below, Google's proposed construction is well-taken.

### 1.    The Language of the '839 Patent

The Court first considers the "displayable" language of claim 26 in its immediate context: "the toolbar being displayable based on a location of a cursor in relation to a hyperlink in a first page in a first window of an application." Having done so, the Court finds that claim 26, when properly construed, clearly teaches a toolbar which is "automatically" displayed, insofar as there is no further action required on the part of the user after the cursor is placed in an appropriate location proximate to the hyperlink. This language in Claim 26 means simply that the toolbar is displayable or capable of being displayed, put before the view of the user, or made evident *based on the location of the cursor*.[2]

---

[2]

Indeed, the Court's commonsense understanding of the word "displayable" is supported by the lexicographers at Merriam Webster, who define "to display" as "to put or spread before the view" or "to make evident." <http://www.merriamwebster.com/dictionary/displayable> (last viewed November 30, 2007). Displayable is an adjective. *Id.* The suffix "-able," forming the adjective, means "capable or worthy of." *The American Heritage Book of English Usage: A Practical and Authoritative Guide to Contemporary English*, Chapter 8, § 2 (Houghton Mifflin Company 1996), <http://www.bartleby.com/64/C008/002.html> (last viewed November 30, 2007). In other words, a toolbar that is "displayable" is simply one which capable of being displayed, put before the view, or made evident.

-9-

This is to say that the display does not occur on its own, and the Court can appreciate that, in this sense, the use of the word "automatic" may be fraught with some difficulty.  The Court would not be so naive as to believe this display occurs without some prompting.[3]  Rather, it is the positioning of the cursor in the vicinity of the hyperlink by a user that prompts the appearance of the toolbar.  That selection occurs not by a click of the button on the user's mouse, but by moving the cursor over or near the hyperlink, such that the toolbar pop-up appears to be "automatic" to a user.

Reading further, the Court finds that the '839 Patent extols the benefits of this "automatic" display of the toolbar over earlier conceived methods of displaying a toolbar.  The Detailed Description of the Invention provides, in pertinent part, that:

> Thereafter, the user selects a hyperlink in block 102 by moving a cursor either "over" or near a hyperlink that the user wishes to select.  When the cursor is "over" or near a hyperlink, the program displays a toolbar which illustrates the link enhancements available for that particular hyperlink in

---

[3]    Having reviewed the patent as a whole, the Court knows that the display of the toolbar in the invention is not the result of some divine providence once the user places the cursor in the vicinity of the hyperlink but is prompted by "detector 70" which "detects the presence of a hyperlink near the location provided by cursor 74" and "sends a toolbar display signal 73 to the display controller 72" whereupon "receipt of a toolbar display signal 73 the display controller 72 sends a signal to the display 11 to display toolbar 20."  '839 patent Co. 7:36-43.

> block 104.  The program may wait a period of
> time, for example, three seconds, after the
> pointer is placed 'over' or near a selected
> hyperlink.

'839 Patent Co. 5:35-43.  True, the selection of the hyperlink by
the user prompts the display, but the '839 Patent does not
contemplate a further action by the user, once the cursor is in the
proper location near the hyperlink, to deploy the toolbar.  There
is no magic here, but there is no right click either, only the
positioning of "the cursor in relation to" a hyperlink.

As further explained in the Summary:

> Blocks 114 and 116 perform in essence the same
> functions that are performed when the user
> places the cursor over a hyperlink, "right
> clicks" the hyperlink and the selects and
> clicks on the open new window command from the
> menu displayed (Netscape Navigator running on
> Windows 98).  The advantage provided by the
> present invention is that the user can open
> the new window with just a single click.
>
> While current browsers enable the user to
> perform a similar function by right clicking
> on the link and then clicking on the "open in
> new window" menu selection to display the
> selected page in a new, browser window,
> however, the user would then have to manually
> minimize this browser window.  Thus the
> present application enables the user to
> accomplish in a single click what might
> otherwise take three or more user actions.
> The more user actions taken by the user, the
> greater the distraction from viewing the
> current page.[4]

---

[4]
The abstract of the patent succinctly explains how the
invention arrives at this improvement:

> This invention permits the user to interact

-11-

'839 patent Co. 6:22-53.

An individual using iLOR's invention could not both right click to open a tool bar and then click again to open the new window (or for that matter, select another desired enhancement to a hyperlink) without clicking at least twice. The description of a "single click" does not support iLOR's proposed construction of Claim 26, and it follows that the '839 Patent teaches the "automatic" display of the toolbar based on the presence of the cursor within a certain proximity of a hyperlink as urged by Google to provide the "advantage" claimed in the '839 Patent.

The patent speaks of alternative embodiments of the invention as follows:

> The Enhanced Hyperlink toolbar may be designed to appear when a user "mouses-over" a

_____

> with a hyperlink in a variety of ways without necessarily having to open and/or follow the hyperlink. This is accomplished by detecting the presence of a cursor near a hyperlink. *When the cursor has remained near the hyperlink for a predetermined time period, a toolbar is displayed* containing one or more link enhancements that a user may select."

'839 Patent Abstract (emphasis added). The same improvement is referenced in the Summary as follows:

> First the presence of a pointer near a hyperlink is detected. Next, *a toolbar is displayed when the pointer remains near the hyperlink greater than a predetermined time*. The toolbar displayed provides at least one choice for a link enhancement."

'839 Patent Co. 2: 55-60 (emphasis added).

-12-

> hyperlink. Alternatively, the toolbar may
> display with the page or the toolbar may
> appear when the cursor or pointer is in a
> predetermined area around the hyperlink.
> Preferably the toolbar is presented to the
> user instantly on mouse-over, or after the
> user keeps the mouse pointer on the hyperlink
> (or banner ad) for a predetermined time, for
> example one to three seconds. A short time
> delay prevents the browser from becoming
> jumbled with too much information if the user
> simply desires to click through on any given
> hyperlink.

'839 Patent Col. 3:60 to 4:3. iLOR argues that the "automatic"

display of the toolbar upon a mouse-over or detection of the

cursor within a certain proximity to the hyperlink is but one

embodiment among many contemplated by the '839 Patent.

Nonetheless, the Court finds that iLOR's argument that there might

be embodiments of its invention without the "automatic" display of

the toolbar to be disingenuous, particularly considering that Claim

26 itself includes the only user action required to render the

toolbar "displayable" – the location of the cursor proximate to the

hyperlink.

No part of the '839 Patent, including Claim 26, suggests the

possibility of an embodiment in which the user would "right click"

in order to display the toolbar. iLOR may not have needed to

explicitly describe every potential embodiment of the invention in

order to obtain patent coverage therefor, but it does not change

the fact that Claim 26, as well as every other portion of the '839

Patent, predicate the display of the toolbar only upon the

placement of the cursor in the vicinity of the hyperlink and not some further action by a user of the invention.  That the method of "detection" is taught in other claims is irrelevant to this Court's decision, because Claim 26 itself places no additional requirements on the user – beyond placement of the cursor – with regard to the display of the toolbar.

Reading the language of Claim 26, both by itself and in the context of the '839 Patent as a whole, this Court is of the opinion that it does not teach a right-click in order to display the toolbar, only the positioning of the cursor over or near the hyperlink.  In this sense, the display is "automatic" with regard to the user, and the Court holds that the proper construction of Claim 26 is one in which the toolbar is "automatically displayed" upon the placement of the cursor in proximity to a hyperlink with no further action on the part of a user.

### 2.   Prosecution History

If the Court was left with any doubt as to whether the '839 Patent comprised an embodiment where a right-click by a user was required to display the toolbar, the Court would need only turn to the prosecution history to disabuse itself of that notion.  The prosecution history of the '839 Patent plainly shows that iLOR gave up any construction of the display limitation that included a toolbar displayed as a result of a user's right-click.  This was done in order to overcome the Patent Examiner's rejections based on

the prior art.  The "automatic" display of the toolbar was a distinction upon which iLOR relied and which ultimately allowed the '839 Patent to be granted over the prior art.

During the prosecution of the '496 Patent, the parent to the patent-in-suit, iLOR emphasized that the Newfield patent was different than the claimed invention because it required the user to click on a hyperlink when selecting it, explaining that the Newfield patent "fail[ed] to teach at least five features of claim 178 . . . .[,]" including "detecting a cursor *in proximity* to said hyperlink [and] *displaying a graphical toolbar in proximity to said cursor while said cursor is in proximity to said hyperlink*[.]" [Exh. H. to Def. MSJ, 8/24/2006, Amendment, at 9 (emphasis in original)].  Indeed, iLOR relied on specific distinctions between the '496 invention and the invention taught in the Newfield patent:

> First, Newfield does not teach detecting a cursor *in proximity to* a hyperlink.  Instead, Newfield teaches that *a user must click on or select a hyperlink* to access the breadth-first search system of Newfield.  See Newfield, e.g., page 5, 3rd paragraph.  *In contrast, the present invention detects a cursor in proximity to the hyperlink.*  Therefore Newfield does not teach detecting a cursor in proximity to a hyperlink.
>
> ...
>
> Third, Newfield does not teach a graphical toolbar adapted to provide a plurality of user-selectable link enhancements. . . .  The Scratchpad window of Newfield is available to the user after the user selection is made, and not before.

-15-

[*Id.* at 10-11 (emphasis in original).]

In other words, in prosecuting the '496 patent, iLOR relied upon the fact that no "right click" or other action beyond positioning the cursor with the mouse was necessary for the user to prompt the display of the toolbar in its invention and that it was, thus, distinct from the Scratchpad invention of the Newfield patent. The arguments made during prosecution of that parent patent are relevant in determining the meaning of the terms at issue with regard to the patent-in-suit. *See Jonsson v. The Stanley Works*, 903 F.2d 812, 818 (Fed. Cir. 1990); *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1333 (Fed. Cir. 2003).

Although Claim 26 of the '839 Patent was presented late in the prosecution of the application, it was clearly linked to Claim 9, as iLOR represented to the Examiner that Claim 47 of its Application No. 60/202,029 (ultimately issued as Claim 26 in the '839 Patent) was allowable for the same reasons as Application Claims 22-33 (which included Claim 30, ultimately issued as Claim 9 of the '839 Patent) because Application Claims 34-51 were similar. [Ex. I to Def. MSJ, 11/3/2006 Amendment, at 8.] Application Claims 22-33 were the subject of a Terminal Disclaimer due to their similarity to the claims of the '496 Patent.[5] [*Id.*]

---

[5] During the prosecution of the '839 Patent, the Examiner rejected Claims 1 and 9, which taught "detecting a cursor in proximity to said hyperlink; displaying a graphical toolbar in proximity to said cursor while said cursor is in proximity to said hyperlink." The Examiner was concerned with "double-patenting" and

-16-

Ultimately, the Examiner allowed the claims, including Claim 26:

> ...based on [the] Terminal Disclaimer (filed on 11/03/2006) and [because,] in addition [,] the prior art of record does not appear to teach or render obvious the claimed limitations in combination with the specific added limitations as recited in independent claims and subsequent dependent claims. The prior art of record fails to teach or suggest a method for enhancing a hyperlink by displaying a graphical toolbar in proximity to the cursor while the cursor is in proximity to the hyperlink...

[Ex. K to Def. MSJ, 11/21/06 Statement of Reasons for Allowance, at 2.]   It follows that, even at the end of the prosecution, the Examiner relied, however tacitly, upon iLOR's distinction between Newfield and its own invention presented during the prosecution of the '496 Patent - the display of the toolbar as a result of the proximity of the cursor to the hyperlink in place of a right click by the user.[6]

---

the fact that these Claims were not "patentably distinct" from Claims 1 and 9 of the parent '496 Patent.  Although not word-for-word identical, the Examiner explained they "contain[] every element of" claims 1 and 9 of the '839 Patent, "and thus[are] anticipated."  [Ex. J. to Def. MSJ, 8/7/2006 Office Action, at 2-5.]  It was in response to this rejection that iLOR, apparently conceding the point, filed a Terminal Disclaimer without traversing the rejection.  [Ex. I to Def. MSJ, 11/3/2006 Amendment, at 8.]

[6]

If iLOR had not intended this result or believed that the Examiner had improperly construed the distinctions it was making when he allowed these later added claims, iLOR could have challenged the Examiner's grouping of the claims in the Statement of Reasons for Allowance, but chose not to do so.  *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 979 (Fed. Cir. 1999).

-17-

iLOR cannot have it both ways.  If similar claims of the '496 and the '839 Patents were allowed, at least in part, because they did not teach a right click, and Claim 26 of the '839 Patent was allowable for the same reasons, it follows that Claim 26 cannot include a right click or, indeed, anything other than a display of the toolbar upon the positioning of the cursor in proximity to the hyperlink.  In the course of prosecuting the patents on its invention, iLOR disavowed an interpretation of the "displayable" limitation that would include a display which resulted from a right click.  Having relinquished the "right click" in order to successfully prosecute its patents in light of the prior art, iLOR cannot rely upon it now to support its claim of infringement.

Having reviewed the prosecution history of the '839 Patent and its parent, the '496 Patent, the Court is all the more firmly persuaded that Claim 26 does not teach a right-click in order to display the toolbar, only the positioning of the cursor over or near the hyperlink in order that the toolbar be displayed.

**B.   Comparing the Construed Claim to the Accused Device**

**1.   Literal Infringement**

"To prove literal infringement, the patentee must show that the accused device contains every limitation in the asserted claims.  If even one limitation is missing or not met as claimed, there is no literal infringement."  *Mas-Hamilton Group v. LaGard,*

-18-

*Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998).  In part, iLOR alleges that Notebook literally infringes on the '839 Patent based on the method by which the toolbar is displayed.

As discussed above, the toolbar display in the asserted claim 26 is properly construed to refer only to a toolbar which is "automatically" displayed, whether upon mouse-over or upon the positioning of the cursor within a designated area surrounding the hyperlink, whether immediately or after a short time delay.  There is no dispute that, in order to display the toolbar, Notebook requires a right click by the user while the cursor is positioned over a hyperlink.

Thus, it is the opinion of the Court that no reasonable fact finder could determine that the accused device/method meets every limitation of the properly construed claim 26 in the '839 patent. Consequently and as a matter of law, there can be no literal infringement of claim 26 of the '839 patent by Google's Notebook product.

### 2.   Doctrine of Equivalents

The Court notes that iLOR has offered no testimony or argument to support a finding of infringement under the doctrine of equivalents, which requires a showing that the difference between the claimed invention and the accused product was insubstantial. *Stumbo,* --- F.3d at ---, 2007 WL 4180137 at *4 (*citing Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 608 (1950)).  In

-19-

this instance, the Court is of the opinion that the prosecution history of the parent '496 Patent and the '839 Patent would estop iLOR from arguing an equivalent. *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1376 (Fed. Cir. 2001). It would be nonsensical to suggest that the "right click" to display a toolbar is the equivalent of the positioning of a cursor in the proximity of a hyperlink to display a toolbar where the prosecution history (and, indeed, the patent itself) clearly spells out the reasons why the distinction presented an advantage and permitted the issuance of the '839 Patent over the prior art.

In any event, iLOR has failed to provide the requisite "particularized testimony and linking argument" as to the "insubstantiality of the differences" between the claimed invention and the accused device or process to support a finding of infringement under the doctrine of equivalents. *PC Connector Solutions LLC v. SmartDisk Corp.,* 406 F.3d 1359, 1364 (Fed. Cir. 2005); *Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996). Accordingly, there can be no finding of infringement by equivalents, and the Court will not consider this argument further.

## IV.   CONCLUSION

Having determined that Notebook neither literally infringes Claim 26 of iLOR's '839 Patent nor does so by virtue of the

doctrine of equivalents, there is no need to further explore the validity of the '839 Patent itself or whether Notebook includes the other elements of Claim 26 of the '839 Patent. The Court declines to do so.

iLOR has failed to demonstrate a reasonable likelihood of success on the merits of this matter, and, there being no dispute of material fact, Google is entitled to judgment as a matter of law since no reasonable fact finder could determine that its Notebook product infringed iLOR's patent on the undisputed facts.

Accordingly, for the reasons stated in this Memorandum Opinion and Order, iLOR's Motion for Preliminary Injunction shall be denied, Google's Motion for Summary Judgment shall be granted, and iLOR's claims against Google shall be dismissed with prejudice. Accordingly,

**IT IS ORDERED:**

(1) that Plaintiff's Motion for Preliminary Injunction [Record No. 12] shall be and the same hereby is **DENIED;**

(2) that Defendant's cross-Motion for Summary Judgment [Record No. 52] shall be and the same hereby is **GRANTED;** and

(3) that Plaintiff's claims pending against Defendant in this matter shall be and the same hereby are **DISMISSED WITH PREJUDICE.**

This the 30th day of November, 2007.

 **Signed By:**

**_Joseph M. Hood_**

**Senior U.S. District Judge**