UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

| | | |
|---|---|---|
| iLOR, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:07-109-JMH |
| | ) | |
| v. | ) | |
| | ) | |
| GOOGLE, INC. | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*     \*\*     \*\*     \*\*     \*\*

This matter is before the Court on the Motion to Find This Case Exceptional Pursuant to 35 U.S.C. § 285 and to Award Attorneys' Fees and Costs [Record No. 88] filed by Defendant Google, Inc. (hereinafter, "Google"). Plaintiff iLOR, LLC (hereinafter, "iLOR"), has filed a Response [Record No. 89], Google has filed a Reply [Record No. 91], and iLOR has, in turn, sought relief to file a Sur-Reply in its Motion for Leave to File Surreply [Record No. 92], to which there is no objection. The Court being sufficiently advised, these Motions are ripe for decision.

I.   **Motion for Leave to File Surreply**

There is no objection to iLOR's Motion for Leave to File Sur-Reply and, having considered the matter, the Court shall grant that motion and consider the tendered Sur-Reply in its evaluation of Google's Motion.

II.  **Motion to Find Case Exception and Award Attorneys' Fees and Costs**

   A.  **Exceptional Case**

   In ordinary patent infringement proceedings, involving resolution of controversies about which reasonable persons may disagree, the "American Rule" applies, and each party bears its own attorney fees and expenses.  *Mathis v. Spears*, 858 F.2d 749, 757 (Fed. Cir. 1988).  Pursuant to 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  Section 285 is designed to "reimburse a part injured when forced to undergo an 'exceptional' case" and allows the court to "'prevent gross injustice to an alleged infringer'".  *Mathis*, 857 F.2d at 753 and 758.

   In undertaking its analysis, first concludes that Google is the prevailing party in this matter, having "established its noninfringement of the patent."  *See Brooks Furniture Mfg. Inc. v. Dutalier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005).  It does not change that the outcome of the case was in Google's favor simply because Google's other defenses, such as the validity of the patent were withdrawn.  Id.

   The Court next conducts a two-step inquiry into whether an award fees under § 285 is appropriate.  The Court first determines whether there is clear and convincing evidence that the case is "exceptional" and, if it determines that it is, then whether an

award of attorney fees to the prevailing party is warranted. *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998) (en banc); *see also Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1370 (Fed. Cir. 1999). The totality of the circumstances must be considered in deciding whether a case is exceptional. *See Nilssen v. Osram Sylvania, Inc.*, 528 F.3d 1352, 1357-58 (Fed. Cir. 2008). The question of whether a case is exceptional is one of fact. *See Interspiro USA, Inc. v. Figgie Int'l Inc.*, 18 F.3d 927, 933 (Fed. Cir. 1994).

The prevailing party can prove an exceptional case exists by showing:

> . . . inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigion; a frivolous suit or willful infringement. Litigation misconduct and unprofessional behavior are relevant to an award of attorney fees, and may suffice, by themselves to make a case exceptional . . . . Inadequacy of pre-filing preparation may be relevant to the "exceptional" case question.

*Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002) (citations omitted); *Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.2d 1242, 1246 (Fed. Cir. 2003).

In this instance, Google argues that the case is exceptional because iLOR's infringement allegations were baseless and its lawsuit frivolous.[1] For the reasons which follow, the Court

---

[1] In addition, Google argues that iLOR engaged in litigation misconduct which enhances the exceptional nature of this case. As

-3-

agrees.

### 1.    Baseless Allegations and Frivolous Lawsuits

"There is a presumption that the assertion of an infringement of a newly granted patent is made in good faith." *Brooks*, 393 F.3d at 1382.   A frivolous lawsuit consisting of baseless allegations may, however, be an exceptional case justifying an award of attorney fees under 35 U.S.C. § 285.   "[T]he pertinent inquiry is whether [Plaintiff] knew or should have known [its claims] were baseless." *Forest Labs, Inc. v. Abbott Labs.*, 339 F.3d 1324, 1330 (Fed. Cir. 2003).   "A frivolous infringement suit is one which the patentee knew or, on reasonable investigation should have known, was baseless." *Stephens v. Tech Int'l, Inc.*, 393 F.3d 1269, 1273-74 (Fed. Cir. 2004).   "While [a] case may be deemed exceptional when there has been some material inappropriate conduct related to the matter in litigation, such as . . . . vexatious or unjustified litigation . . . absent misconduct and conduct of the litigation or

---

the Court has determined that the infringement allegations were clearly baseless and the lawsuit clearly frivolous *ab initio*, the Court need not reach a decision on these grounds and declines to do so.

Google also argues, almost as an afterthought, that iLOR vexatiously multiplied the proceedings in violation of 28 U.S.C. § 1927.   To the extent that Google seeks relief under 28 U.S.C. § 1927 against iLOR, such relief is not available.   Unlike Fed. R. Civ. P. 11, which authorizes sanctions against an offending attorney, party, or both, § 1927 does not apply to the parties. *See Zaldivar v. City of Los Angeles*, 780 F.2d 823, 931 (9th Cir. 1986); *U.S. v. Inter'l Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991) ("clients may not be saddled with such awards").

in securing the patent, sanctions may be imposed against the patentee only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." *Brooks Furniture Mfg., Inc.*, 393 F.3d at 1381.

An infringement action

> . . . does not become unreasonable in terms of section 285 if the infringement can reasonably be disputed.  Infringement is often difficult to determine, and a patenteee's ultimately incorrect view of how a court will find does not itself establish bad faith.

*Brooks*, 393 F.3d at 1384.  In other words, there is no sanction for simply being wrong or reaching the opposite conclusion from that ultimately reached by the Court.

In this matter, however, Google argues that iLOR never had a reasonable belief that Google Notebook infringed the '839 Patent. Specifically, Google argues that iLOR was aware long before filing suit that Google Notebook does not automatically display link enhancement toolbars, requiring instead a "right click" of the mouse as this Court discussed *ad nauseum* in its November 2007 Memorandum and Order, and that the scope of iLOR's own patented technology did not extend to such non-automatic methods of displaying such toolbars.  The Court agrees.

iLOR's infringement allegations were based on the infringement theory that claim 26 of the '839 patent covers not only link enhancement toolbars incapable of automatically displaying without additional user intervention like a right click, but also those

which require such action on the part of a user.  This theory was directly contrary to the position that the inventors of the '839 device espoused during prosecution of claim 26 and contrary to what Google has termed "the pre-litigation differentiator statements" made by iLOR CEO Mansfield.

As explained in this Court's Memorandum Opinion and Order of November 30, 2007:

> The prosecution history of the '839 Patent plainly shows that iLOR gave up any construction of the display limitation that included a toolbar displayed as a result of a user's right-click.  This was done in order to overcome the Patent Examiner's rejections based on the prior art.  The "automatic" display of the toolbar was a distinction upon which iLOR relied and which ultimately allowed the '839 Patent to be granted over the prior art.
>
> During the prosecution of the '496 Patent, the parent to the patent-in-suit, iLOR emphasized that the Newfield patent was different than the claimed invention because it required the user to click on a hyperlink when selecting it, explaining that the Newfield patent "fail[ed] to teach at least five features of claim 178 . . . .[,]" including "detecting a cursor *in proximity* to said hyperlink [and] *displaying a graphical toolbar in proximity to said cursor while said cursor is in proximity to said hyperlink*[.]" [Exh. H. to Def. MSJ, 8/24/2006, Amendment, at 9 (emphasis in original)].  Indeed, iLOR relied on specific distinctions between the '496 invention and the invention taught in the Newfield patent:
>
>> First, Newfield does not teach detecting a cursor *in proximity to* a hyperlink.  Instead, Newfield teaches that *a user must click on or select a hyperlink* to access the

-6-

breadth-first search system of Newfield. See Newfield, e.g., page 5, 3rd paragraph. *In contrast, the present invention detects a cursor in proximity to the hyperlink.* Therefore Newfield does not teach detecting a cursor in proximity to a hyperlink.

...

Third, Newfield does not teach a graphical toolbar adapted to provide a plurality of user-selectable link enhancements. . . . The Scratchpad window of Newfield is available to the user after the user selection is made, and not before.

[*Id.* at 10-11 (emphasis in original).]

In other words, in prosecuting the '496 patent, iLOR relied upon the fact that no "right click" or other action beyond positioning the cursor with the mouse was necessary for the user to prompt the display of the toolbar in its invention and that it was, thus, distinct from the Scratchpad invention of the Newfield patent. The arguments made during prosecution of that parent patent are relevant in determining the meaning of the terms at issue with regard to the patent-in-suit. *See Jonsson v. The Stanley Works*, 903 F.2d 812, 818 (Fed. Cir. 1990); *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1333 (Fed. Cir. 2003).

Although Claim 26 of the '839 Patent was presented late in the prosecution of the application, it was clearly linked to Claim 9, as iLOR represented to the Examiner that Claim 47 of its Application No. 60/202,029 (ultimately issued as Claim 26 in the '839 Patent) was allowable for the same reasons as Application Claims 22-33 (which included Claim 30, ultimately issued as Claim 9 of the '839 Patent) because Application Claims 34-51 were similar. [Ex. I to Def. MSJ, 11/3/2006

Amendment, at 8.]    Application Claims 22-33
were the subject of a Terminal Disclaimer due
to their similarity to the claims of the '496
Patent. [*Id.*]

Ultimately, the Examiner allowed the claims,
including Claim 26:

> ...based    on    [the]    Terminal
> Disclaimer (filed on 11/03/2006) and
> [because,] in addition [,] the prior
> art of record does not appear to
> teach or render obvious the claimed
> limitations in combination with the
> specific    added    limitations    as
> recited in independent claims and
> subsequent dependent claims. The
> prior art of record fails to teach
> or suggest a method for enhancing a
> hyperlink by displaying a graphical
> toolbar in proximity to the cursor
> while the cursor is in proximity to
> the hyperlink...

[Ex. K to Def. MSJ, 11/21/06 Statement of
Reasons for Allowance, at 2.]    It follows
that, even at the end of the prosecution, the
Examiner relied, however tacitly, upon iLOR's
distinction    between    Newfield    and    its    own
invention presented during the prosecution of
the '496 Patent - the display of the toolbar
as a result of the proximity of the cursor to
the hyperlink in place of a right click by the
user.

[Record No. 70 at 14-17].  This differentiation was not limited to

the prosecution of the patent for it is also undisputed that, prior

to    commencing    this    lawsuit,    on    the    PreFound    Blog

(http://www.prefoundblog.com), iLOR CEO Steve Mansfield identified

iLOR's automatically displayed "fly-out" toolbar menu as a way of

differentiating iLOR's product from Google Notebook, which required

action by the user to prompt a display.  [Record No. 54, Exhibit S.]

All of this is to say that, prior to instituting the present lawsuit, iLOR took the position in both its patent prosecution and its portrayal of its product to the public that it had created something unique and that the uniqueness depended upon a link enhancement toolbar that displayed automatically instead of in response to a user's right click, as one would find in Google Notebook.  It follows that iLOR was aware or should have been aware of the fatal flaws in its theory of the case in this instance, even if it failed to recognize them for what they were.[2]

The Court concludes that this case was brought in objective bad faith and was frivolous based on iLOR's awareness of or, at best, willful blindness to, these flaws.  *See Atlantic Constr.*

_____

[2]  iLOR has not offered much in the way of its own defense, instead insisting that this is "a case of a gargantuan bully beating upon a dead horse" in which Google is not attempting to recoup its attorneys fees but is, instead, attempting to obtain a business advantage through the unrestricted right to use iLOR's technology.  [Record No. 89 at 3.]  iLOR clearly misses the point.  This case is not and never has been about who was big and who was small.  Rather, it was about whether one party's product infringed another party's patent for an invention – regardless of who those parties were or their respective market shares.  As for the tired argument that Google is now or ever has attempted to obtain the unrestricted right to use iLOR's technology described in claim 26 of the patent-in-suit, it is irrelevant to this suit as both the Federal Circuit Court of Appeals have determined that Google Notebook simply is not the invention described in claim 26 and iLOR has not described any other efforts by Google to use its claim 26 technology.  iLOR's continued efforts to relitigate these issues are not well taken by the Court.

*Fabrics, Inc. v. Dandy Prods., Inc.*, 64 Fed. Appx. 757, 763 (Fed. Cir. 2003); *Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 809 (Fed. Cir. 1990) (offering claim construction precluded by prosecution history is evidence of frivolousness of patentee's position); *Mathis*, 857 F.2d at 761 (exceptional case found where infringement allegations lacked "even a minimally arguable basis" and legal arguments were "implausible and unsupportable"). "Where, as here, the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness, or grass negligence." *Elltech*, 903 F.2d at 811 (finding exceptional case based on total lack of evidence to show infringement); *Takeda Chem. Indus., Ltd. v. Mylan Labor., Inc.*, 548 F.3d 1387, 1387 (Fed. Cir. 2008) (same); *Phonometrics*, 350 F.3d at 1246-4 (exceptional conduct found where patentee "never articulated a viable infringement theory").

An exceptional case may be found where, as in this case, questions of noninfringement were "not close," which is clearly the situation presented here. *Takeda Chem. Indus., Ltd.*, 548 F.3d at 1387; *Interspiro*, 18 F.3d at 934. In light of the facts discussed above, which the Court finds to be clear and convincing, the Court finds this case to be exceptional under 35 U.S.C. § 285.[3]

_____

[3]    Accordingly, the Court need not address the additional argument of whether iLOR's actions taken in the course of litigation were, themselves, the basis for such a finding and

**B.    Reasonable Fee**

The Court next turns its attention to the question of what fee award is warranted. Reasonable fees are those adequate to compensate competent counsel without delivering those attorneys a windfall. *See United States v. General Elec. Co.*, Civil Action No. 5:00-CV-222, 2008 WL 152091 at *1 (W.D. Ky. Jan. 15, 2008). The "amount of fees awarded to the 'prevailing party' should bear some relation to the extent to which that party actually prevailed," *Beckman Instrs. Inc. v. LKB Produkter, AB*, 892 F.2d 1547, 1554 (Fed. Cir. 1989), which was, in this case, *in toto*. Calculation of a reasonable amount of fees starts with a "lodestar" amount, *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980), "the number of hours reasonably expended on the litigation multiplied by a reasonably hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

**1.    Reasonable Hourly Rate**

A reasonable rate generally corresponds to the prevailing rates in the relevant community, but this Court may also exercise its discretion to consider national or specialty rates when determining what is reasonable. *General Elec. Co.*, 2008 WL 152091 at *2; *Howes v. Medical Components, Inc.*, 761 F.Supp. 1193, 1195 (E.D. Pa. 1990). If a prevailing party had good reason for using non-local counsel, then the comparison may be to prevailing rates

declines to do so.

in the attorney's business location.  *Howes*, 761 F.Supp. at 1195-97.  Of course, the amount of the reasonable fees to award, if anything, is within the discretion of this Court, and even an exceptional case does not require the award of attorney's fees. *S.C. Johnson & Son, Inc. v. Carter-Wallce, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986).

In this instance, Google's local counsel of record, Middleton Reutlinger, P.S.C., charged rates ranging from a high of $350 per hour to a low of $175 per hour, which do not appear to be out of keeping with the Southeastern region average hourly rate for intellectual property practitioners ($245 per hour according to the AIPLA bi-yearly Economic Survey from 2007).  Google's primary counsel in this matter, attorneys from Fish & Richardson, charged more with rates ranging from a high of $764.75 per hour to $220 per hour, but Google argues that the firm's rates are reasonable and reflect its outstanding national reputation for intellectual property litigation and the highly specialized expertise of its attorneys and legal staff.  Further, Google argues that its higher hourly billing rates are justified by the excellent results obtained for Google on its motion for summary judgment.  *See Mathis*, 857 F.2d at 755 (citing *Hensley*, 461 U.S. at 435) ("Where, as here, a prevailing party 'has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally this will encompass all hours reasonable expended on the

litigation....'"); *see also Takeda Chem. Indus., Ltd.*, 548 F.3d at 1390-91.   In this instance, the Court does not disagree and concludes that Google's use of primary counsel from Fish & Richardson – even at rates which well exceeded that of local counsel or the Southeastern average, was justified.  The attorneys were clearly specialists in the field of intellectual property – which is, by its very nature, national and not necessarily regional in scope – and, specifically, infringement suits, the art of litigating such a suit, and the background issues of patent prosecution.  Further, counsel from Fish & Richardson were clearly intimately aware of the Google Notebook product, its parameters and limitations, as well as the history of these two parties, as is evidenced by the letters exchanged by the parties prior to the present litigation with regard to their dispute.  Simply stated, it makes sense to proceed with such counsel, even at a higher rate than one might pay for local counsel, in a suit such as this.

Accordingly, the Court concludes that the hourly rates are reasonable when considered in light of the national and specialty aspects of the work involved in this litigation.

### 2.   Hours Reasonably Expended

With regard to the number of hours worked, iLOR insists that Fish & Richardson personnel unnecessarily duplicated work in reviewing and analyzing the iLOR patents and file histories, prior art searches, analyzing the validity of the iLOR patent or

reviewing or analyzing prior art, and analyzing Google's alleged infringement of iLOR patent. iLOR next argues that it was unreasonable that patent file histories were obtained at least 9 times by several different people and complains that it was unreasonable for five partners and two associates to participate in the opposition to iLOR's motion for preliminary injunction and Google's motion for summary judgment and for six partners and one associate to participate in the development of the appeal briefs in this matter, particularly as those partners billed at a higher rate for work that might have been done by associates with lower billing rates.

Frankly, iLOR's arguments are conclusory at best, as iLOR does not suggest with any specificity how or why the work done was excessive, duplicative, or billed at too high of a rate in specific instances. Nonetheless, the Court has considered the documents offered in support of Google's motion in order to ascertain whether it is apparent that work was excessive, unnecessarily duplicative, or billed at too high of a rate. In undertaking this analysis, the Court notes that iLOR does not suggest that the number of hours expended were excessive - merely the number of personnel involved were too numerous and the work of partners too prominent where associates might have been utilized to lessen the bill.

In reviewing the work reported by the various Fish & Richardson attorneys, the Court notes that the highest billing

rates belong to Hon. Frank E. Scherkenbach and Hon. John Dragseth. Hon. Scherkenbach ($764.75 per hour) billed only 113.1 hours over time from June 2007 through October 2008. The bulk of his work centered around preparation for arguments that he presented before this Court and the Federal Circuit as well as, what appears to be his, oversight and management of the litigation itself. With this in mind, the Court notes that his work was neither duplicative of that performed by any other attorney in this case nor was it necessarily the type of work that one might consider more appropriately delegated to a junior partner or associate. Indeed, the number of hours billed by Hon. Scherkenbach were modest and quite reasonable in this Court's view. Similarly, the hours invested in this matter by Hon. Dragseth ($625 per hour), totaled only 71.6 hours from April through September 2008 and were limited to oversight of work on and development of the arguments presented on appeal, including a mere 13.8 hours in which it appears that he assisted Hon. Scherkenbach in preparing for the argument presented to the Federal Circuit Court of Appeals. Again, there is no indication that this work was duplicative of that performed by any other attorney in this case nor was it necessarily the type of work that one might consider more appropriately delegated to a junior partner or associate. Rather, it demonstrates a modest use of a more senior attorney's time and efforts in a case which is not, in this Court's opinion, unreasonable by any stretch of the

imagination.

It is clear that the vast majority of work was performed by less costly partners and associates with much lower billing rates than Hon. Scherkenbach and Hon. Dragseth. Indeed, the lion's share of work by any of the principals of Fish & Richardson was performed by Hon. Kurt L. Glitzenstein ($574.68 per hour) – 201.9 hours from June 2007 through October 2008, with bulk of his work billed in the period of briefing and argument on motions for summary judgment, opposition to motion for preliminary injunction, and preparation for and participation in argument before this Court. After arguments before this Court, Hon. Glitzenstein billed for only another 20.9 hours of time in this case, some of which was devoted to the practice of the Motion to Dismiss Google's counterclaims, filed before this Court, and a small share of which was dedicated to work on the appeal, which modest amount of time is no doubt justified by his earlier experience with this matter before this Court – but in no way appears to duplicate the efforts of Hon. Dragseth, who apparently took up the appellate mantle for Google at that point.

The bulk of the work was performed by two associates, Hon. Peter Kirk (at $440.04 per hour, presumably more senior) and Hon. Matthew Leary (at a very reasonable $273.85 per hour), with 607.7 hours of work billed between them over the course of June 2007 through February 2008. It is clear that these two attorneys bore

the brunt of the work with regard to drafting and working on prior art research and analysis. Considering the sheer amount of patent prosecution information and data that was explored in the presentation of this case, the volume of pleadings filed, and the well-executed if lengthy presentation that resulted from their efforts, the Court cannot say that 607.7 hours of research and analysis was excessive – nor does iLOR.[4]  Indeed, the Court cannot conclude that it was duplicative of the work of any other individual, particularly that of the more senior attorneys, whose efforts were, based on the billing records, directed at refining and polishing the materials provided by these less experienced (although no less valuable by any means) attorneys in preparation for their presentation to the Court.

During the undoubtedly busy days leading up to the filing of Google's final pleadings and argument before this Court related to

---

[4]The Court is mindful that much of Google's efforts had to resemble that conducted attorneys in the prosecution of a patent itself, effectively recreating that effort to determine and ultimately to understand what was claimed with regard to iLOR's patent and the restrictions placed on the claim by virtue of prior art and concessions during the prosecution itself.  That it was conducted over the short period from June through November 2007 no doubt required Google to call upon many hands to complete the work in time.

In this same vein, the Court is not persuaded by iLOR's conclusory allegation that it was unreasonable for patent file histories to be obtained at different times by several different people (the Court notes particularly those billing entries for June 13, July 2, July 3, September 7, September 10, October 3, and October 10) were duplicative of one another or constituted multiple disbursements for the same documents.

iLOR's motion for preliminary injunction and Google's motion for summary judgment, Hon. Shelley Mack ($444.96 per hour) billed for 103.8 hours of work in October and November 2007, including work on Google's Reply brief, required disclosures, and the preparation of slides which were used during the hearing in order to elucidate Google's argument. iLOR has not specified how this work was duplicative of any other attorney's efforts in this case, nor does the Court find that it was.

The remaining work performed in these cases, by Hon. Jason Wolf (13.1 hours at $485 per hour) and Hon. Christina Chu (10.2 hours at $495 per hour) was limited and clearly directed at aspects of the case which did not duplicate work done by other attorneys. Specifically, Wolf's billed hours were limited in scope to work on two business days related to specific prior art and materials from another litigation in which Google was involved, preparation for a deposition, and review of the relevant products for hyperlink functionality. Hon. Chu's work was limited to a single day in which she conducted legal research in preparation for the appeal and her review of record citations in Google's appellate brief.[5]

---

[5] Early work in the initial days of the case was performed, as well by two other staff members, Hon. Erin Kaiser (11.7 hours at $220 per hour) and Hon. Wade Kirshy (28.5 hours at $220 per hour), both of which focused in these limited hours on what was – by all appearances and accounts – a Herculean prior art search and review. Neither of these attorneys were licensed until 2008, so the Court concludes that this limited work was performed in the summer of 2007 while they served as clerks or in other roles at Fish & Richardson. Nonetheless, their respective rates of $200 per hour

Upon a careful review of the various billing entries of the attorneys working on this matter, both at Fish & Richardson (1,407.91 hours, when the support staff's hours are considered in addition to those of the attorneys) and Middleton Reutlinger (174.2 hours of which iLOR does not complain in any substantial manner), over seventeen months of litigation, the Court concludes that the hours expended by these firms personnel were reasonable when considered both individually and cumulatively and that the hours expended by the various attorneys were not duplicative of one another.[6]

### 3.   Lodestar Amount

Multiplying "the number of hours reasonably expended on the litigation multiplied by a reasonably hourly rate," the Court

---

are in keeping with that charged by other non-attorney staff at Fish & Richardson in this matter and are not unreasonable.

[6]Nor does the Court believe that any reduction in the fees award is necessary because of "block billing," as iLOr alleges. Block billing "make[s] it impossible for the court to determine, with any degree of exacticude, the amount of time billed for a discrete activity," leaving the court "to estimate the reduction to be made because of such insufficient documentation." *Gratz v. Bollinger*, 353 F. Supp.2d 929, 939 (E.D. Mich. 2005). In this instance, iLOR hasn't identified which entries are "vague," nor after careful review does the Court believe that the entries are "vague." This is hardly the situation where time entries read only "research" or "writing," for each entry identifies what element of research, writing, or development of the case each biller was working on, ranging from various kinds of work with prior art, to patent history, patent analysis, invalidity analysis, communications with client and local counsel, communications with opposing counsel, review of documents and pleadings filed by iLOR, specific motions to which attention was directed, and preparation for specific depositions.

concludes that $573,933.25 for the services of Fish & Richardson personnel and $52,595 for the services of Middleton Reutlinger personnel is the proper and appropriate lodestar in this matter. *Hensley*, 461 U.S. at 433.

### C.  Costs

Finally, an award of fees under § 285 should also includes sums incurred in preparation for and performance of legal services relating to the action.  *See Central Soya*, Inc. *v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983); *General Elec.*, 2008 WL 152091 at *6; *Mathis*, 857 F.2d at 754 (§ 285 permits "reimbursement of legitimate expenses defendant was unfairly forced to pay"), 757. These costs and expenses include "reasonable out-of-pocket expenses incurred by attorneys and normally charged to their clients," including "expenses for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, facsimiles, and courier services." *General Elec.*, 2008 WL 152091 at *6 (quoting *Le Blanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1988)).  Expert fees may also be awarded to a prevailing party in exceptional cases.  See *Mathis*, 857 F.2d at 759; *Takeda Chem. Indus., Ltd.*, 548 F.3d at 1391.  This Court has plenary authority to order prejudgment interest on any award of fees and costs under § 285, as well as authority pursuant to 28 U.S.C. § 1961 to award postjudgment interest.  *See Mathis*, 857 F.2d at 754, 760-61.  Of course, in any event, certain of the costs requested

may be taxed to the non-prevailing party in this as in any other civil case under 28 U.S.C. § 1920. *See* Fed. R. Civ. P. 54(d).

In this instance, the Court concludes that Google's costs and expenses, incurred in the litigation of this matter and in the amount of $33,312.68 shall be awarded under § 285 as follows: $6,359.36 for travel; $3,444.36 for research and obtaining documents and pleadings; $7,687.50 for expert fees; $6,153.31 for electronic document handling; $5,723.99 for copying (also taxable under 28 U.S.C. § 1920); $3,188.51 for court reporting fees and costs and deposition transcripts (also taxable under 28 U.S.C. § 1920); and $755.65 for hearing transcripts (also taxable under 28 U.S.C. § 1920). The Court declines, however, to tax Google's $260.00 in pro hac vice admission fees, as such expenses are typically those of counsel, not the client. *See Halliburton Co. v. Ward*, Civil Action No. 06-45-C, 2007 WL 2602214, *2 (W.D. Ky. Sept. 12, 2007) (construing 28 U.S.C. § 1920).

## III. Conclusion

For all of the foregoing reasons, the Court shall grant the motions at bar and award Google its fees and expenses as outlined above.

Accordingly, **IT IS ORDERED**:

(1) that Google's Motion to Find This Case Exceptional Pursuant to 35 U.S.C. § 285 and to Award Attorneys' Fees and Costs [Record No. 88] shall be, and the same hereby is, **GRANTED**;

(2)   that iLOR's Motion for Leave to File Surreply [Record No. 92] shall be, and the same hereby is, **GRANTED**;

(3)   that the Clerk shall **FILE** iLOR's tendered Surreply in the record of this matter; and

(4)   that Google shall have **ten (10) days** from entry of this Order to submit counsel's detailed billing records and itemization of costs and expenses in support of its request for fees and expenses associated with filing its Motion to Find This Case Exceptional Pursuant to 35 U.S.C. § 285 and to Award Attorneys' Fees and Costs [Record No. 88].   iLOR shall have **ten (10) days** thereafter to file any objections thereto.

This the 15th day of October, 2009.



Signed By:

_Joseph M. Hood_ 

Senior U.S. District Judge

-22-